## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

REGINALD HOYLE,

      Plaintiff,

vs.

JERRY R. MITCHELL, JR., D/B/A
JR'S TOWING & RECOVERY,

      Defendant.

Civil Action File No.
1:22-cv-00488-SEG

## PLAINTIFF'S SUPPLEMENTAL MOTION FOR A NEW TRIAL[1]

Plaintiff Reginald Hoyle seeks a new trial pursuant to Fed. Civ. P. 59, from a defense verdict following a personal injury trial. Over the course of four days, defense counsel repeatedly made highly prejudicial statements before the jury raising irrelevant and inadmissible topics including the potential financial impact of a verdict, who would pay it, and the existence or non-existence of liability insurance. None of these issues is probative of the Defendant's liability for or the amount of Plaintiff's damages—the only issues before the jury. Because the totality of defense counsel's prejudicial conduct contaminated the trial and

---

[1] Plaintiff incorporates the arguments made in its Motion for New Trial, Doc. 248.

deprived Plaintiff of a fair trial, Plaintiff respectfully requests that this Court grant this motion for a new trial.

## I.    Standard of Review for Motion for New Trial based on Improper Argument and Prejudicial Statements.

A trial court may grant a new trial under Rule 59, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her]." *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 237 F. App'x 423, 424 (11th Cir. 2007).

The Eleventh Circuit Court of Appeals reviews a district court's grant of a new trial for an abuse of discretion. *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982). Where a district court grants a new trial "based on prejudicial conduct or pernicious behavior," it is less likely to constitute an abuse of discretion than a grant of a new trial based on some other ground, such as the weight of the evidence, "[b]ecause the trial judge who is actually present at trial, ... [is] best able to determine whether the proceeding has been 'contaminated' by events outside the jury's control." *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990). Furthermore, where a new trial is based on circumstances over which the

jury had no control, "there is no usurpation by the court of the prime function of the jury as the trier of the facts and the trial judge necessarily must be allowed wide discretion in granting or refusing a new trial." *Williams,* 689 F.2d at 974.

Where the motion is based on conduct to which the moving party objects during trial, the Court of Appeals considers "the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021). A new trial is warranted only if the remarks were such as to impair gravely the calm and dispassionate consideration of the case by the jury. In the absence of an objection, the Court reviews for plain error, which is seldom justified. When the complaining party objects to some but not all allegedly improper statements, we apply these two differing standards while considering the record as a whole. *See Id.*

## II.  The Totality of Statements by Defendant Deprived Plaintiff of a Fair Trial.

Motions for new trial rest not on "individual instances or types of impropriety," but reviewing courts look instead to "the argument as a whole." *Falkowski v. Johnson*, 148 F.R.D. 132, 135 (D. Del. 1993). The Court no doubt recalls Plaintiff's motion for mistrial following defense counsel's highly prejudicial statements during closing argument—statements counsel admitted were improper

and for which counsel apologized to the Court. The offending statements could not, however, be unheard by the jury. The combination of prejudicial statements throughout the four-day trial, the improper closing argument, and the jury's questions during deliberations confirm the highly prejudicial nature of the comments and the effect on the jury. Taken as a whole, these statements were sufficient to "impair gravely the calm and dispassionate consideration of the case by the jury" and warrant a new trial. *Ruiz,* 991 F.3d at 1141.

The Court looks to whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements. *Falkowski,* 148 F.R.D. at 135 (citing *Fineman v. Armstrong World Indus., Inc.* 980 F.2d 171, 207 (3d Cir. 1992)). "Often ... a combination of improper remarks are [sic] required to persuade us of prejudicial impact." *Id.* That's exactly what happened in this case.

## A.    The Improper "Golden-Rule" question during Voir Dire.

Defense counsel began by violating the golden rule in voir dire, by asking the panel "So if you're selected in this jury and you award damages, would you treat that money any differently than you would your own money?" T126:9-11. But "[t]he straight golden rule argument—'put yourself in the shoes of my client,'—clearly has been banned by binding precedent." *Colman v. Home Depot U.S.A., Inc.,* No. 1:15-CV-21555-UU, 2016 WL 4543119, at *1 (S.D. Fla. Feb. 9,

2016) (citing *Woods v. Burlington Northern R.R. Co.*, 768 F.2d 1287, 1292 (11th

Cir. 1985), *overruled on other grounds by Burlington N. R.R. Co. v. Woods*, 480

U.S. 1 (1987).

The Defendant cannot ask the jurors to put themselves in the Defendant's

shoes—but that's exactly what he did when he asked the jury to treat damages as if

they were the defendant who was paying with their own money. In addition to

objecting on these grounds, Plaintiff's counsel also argued that defense counsel's

comments "opened the door during the case to discuss insurance." T130:1-10. The

implication of this question at the very start of the case was to mislead the jury to

believe that Defendant would be personally paying the verdict. In addition to being

false, none of this was proper for the jury to consider because questions relating to

who would be responsible for paying the verdict and how it might financially

impact them was not probative of any relevant fact at this trial. *Falkowski*, 148

F.R.D. at 136 ("Who would pay the judgment is irrelevant to the sole issue of

damages.").

### B.     The Demand Letter to State Farm Introduces Liability Insurance.

In trial, defense counsel next introduced and the Court admitted a demand

letter by Plaintiff arising out of a prior 2019 car accident. The letter was written by

Plaintiff's-then attorney and addressed to "State Farm Insurance." Trial Exhibit

DX 5 ("the State Farm Letter"). Plaintiff objected to the introduction of this letter and requested that "Morgan & Morgan" be redacted, and that the Court also redact references to statements relating to any permanent injury. The parties agreed to redact the references to Morgan and Morgan, but permitted the references to "[p]ermanent [i]njury" in the letter. Notably, the letter is addressed to "State Farm Insurance," and referred throughout the letter to State Farms "insured"—that is, the party who collied with Plaintiff.

The admission of this letter, combined with the defense counsel's prejudicial statements contributed to Plaintiff's inability to receive a fair trial. Fed. R. Evid. 403. The prejudicial nature of introducing liability insurance far outweighed any probative value of the letter. Even assuming for the sake of argument,[2] as Defendant contends, that the State Farm Letter was admissible to impeach the Plaintiff, it impermissibly introduced the subject of liability insurance to the jurors. But it is improper to raise the question of insurance coverage before the jury in a personal injury action. *Joynor v. Berman Leasing Co.,* 398 F.2d 875, 878 (5th Cir.

---

[2] Plaintiff incorporates its objection to the admissibility of DX 5 previously made it in its Motion for New Trial, under Rule 408. Furthermore, the admission of the unredacted letter violates Rule 403, in that the overall prejudice of the letter far outweighed its probative value.

1968).[3]  "As a general rule, 'evidence of insurance coverage is so prejudicial by nature that it should not be admitted unless it is clearly relevant and, as with any generally prejudicial evidence, in determining its admissibility, the trial court should not admit it unless its relevance outweighs its prejudice.'" *McClellan v. Evans*, 294 Ga. App. 595, 596 (2008).

The point for which the Court permitted the evidence, that Plaintiff had previously claimed he had a permanent injury from a car wreck in 2019 could have been introduced without also introducing the liability insurance, for instance, by redacting the letter. Again, the prejudice comes from the cumulative effect of the Defendant's statements. At this point in the trial, the Defendant's voir dire questions has already suggested to jurors that the Defendant would be responsible for paying any damages the jury awarded, and now, the State Farm Letter has raised the issue of liability insurance, albeit in a prior lawsuit. But the jury was not permitted to hear any evidence about whether there was any liability insurance in

---

[3] It is usually the Defendant objecting to the introduction of liability insurance, lest the jury improperly take that into consideration in its deliberations. But having sought admission of the State Farm Letter introducing liability insurance, the invited error doctrine prevents him from complaining about that now. A party introducing evidence generally "cannot complain on appeal that the evidence was erroneously admitted." *Ruiz*, 991 F.3d at 1140.

*this case*. That is, the jury was left to infer that evidence of insurance is generally permissible, but that they could conclude the absence of liability insurance evidence meant there was none. And based on defense counsel's improper statements, the jury may conclude that the Defendant would be paying damages himself—without the benefit of insurance, an assumption that would have been irrelevant, but was also false. *See Allstate Ins. Co. v. James,* 845 F.2d 315, 319 (11th Cir. 1988) (overruling an objection or refusing to issue an instruction to limit the impact of an improper argument may heighten the possibility that a jury is persuaded by it).

### C.    The Admittedly Improper Closing Argument.

But Plaintiff's inability to receive a fair trial all came together in the Defendant's closing argument. In his closing, defense counsel focused on the State Farm Letter, which he referred to as "the letter where [plaintiff] claimed permanent injuries." T662:18-19; T674:12-14 ("His lawyer previously claimed he had the same injuries he's claiming in this accident and that those injuries were permanent."). Counsel attacked Plaintiff's credibility, accusing him repeatedly of "not testifying truthfully" T658:13-14; T659:4 ("He didn't testify truthfully.") Counsel argued:

> And if this case is about the search for the truth, your analysis kind of stops right there. . . . Before you can come in this courtroom and ask a man over here to pay millions of dollars, the basic minimum is you ought to testify to tell the truth. T659:5-10.

Plaintiff's counsel immediately objected, T659:11, and argued that defense counsel's statement was a falsity, that Plaintiff should be allowed to tell the jury that Defendant had liability insurance, and that Defendant would not be responsible for the verdict. T659:15-21. At the bench conference, the Court said to defense counsel, "I wish you had not done that," T659:22, noting that the Court would consider the objection during the remainder of closing, and admonished defense counsel "[d]o not do that again." T660:1. The Court did not offer any instruction or correction to the jury at the time. T:660:7.

Despite the Court's warning, a few minutes later, defense counsel continued: "Well, how do you think it feels for Mister – my client to sit over there and get sued for a million dollars or millions of dollars." T662:7-9. Again, defense counsel's clear implication was that the Defendant would be responsible for the payment of any verdict—even though the Court had already told him to "not do that again." Defense counsel's statements were in direct violation of the Court's orders, and highly improper and warranted a new trial. *McWhorter,* 906 F.2d at 677. Near the conclusion of his argument, counsel argued, "Ladies and gentlemen,

this is an important day. Plaintiff's right, they don't get to come back, but you know what, Mr. Mitchell doesn't get to come back either." T674:15-17.

At the conclusion of his argument, at a bench conference, defense counsel admitted, "I misspoke. There is no question about that." T675:15-16. Plaintiff moved for a mistrial which the Court denied. T677:9, 16-17. Following the bench conference, the Court did not address the jury about defense counsel's improper argument in any way. Plaintiff proceeded with a rebuttal argument and the jurors were dismissed for the day without any instruction or correction from the Court about the improper argument.

On the following day, the Court gave a limiting instruction. Doc. 232. The instruction read in part, "I instruct you that you should _not_ consider in your deliberations what person or what entity might pay any damages that the jury might award." But Plaintiff was not permitted to correct the misimpression that the Defendant was paying the verdict himself and the Plaintiff was not permitted to raise the issue of liability insurance with the jury.

_Falkowski v. Johnson_, 148 F.R.D. 132, 134 (D. Del. 1993), is instructive. There the district court granted a new trial where the attorney improperly introduced irrelevant evidence of insurance coverage, and then in closing, implied to the jury that insurance would pay a verdict stating, "don't waste a lot of

sympathy thinking that I am going to be pursuing Mr. Johnson after this trial, because you can't get blood out of a stone." *Falkowski* involved the grant of a new trial after a plaintiff's verdict where the plaintiff's attorney implied insurance would pay. Here, a defense verdict resulted from defense counsel (falsely) suggesting Defendant would have to pay. The *Falkowski* court granted a new trial and so should this Court.

That case was also primarily a damages trial and because "[w]hether plaintiff would be forced to squeeze 'blood out of a stone' or would be able to recover from some other source has no bearing on the amount of damages. The subject matter had no place in this trial." *Id.* at 136. Here, beginning from the very start of voir dire through the closing argument, defense counsel repeated the message that the jurors should place themselves in the shoes of the defendant, that they should believe the Defendant would have to pay "millions" of dollars from his own pocket were such a verdict awarded, and that there was no insurance to assist the Defendant. The introduction of the State Farm Letter into evidence—a demand letter addressed to "State Farm Insurance" from a prior accident—furthers the Defendant's point. The highly prejudicial reference to liability insurance in a prior case and the Court's refusal to permit discussion of liability insurance by Defendant in this case, served to reinforce the misimpression by defense counsel

11

that the Defendant would pay the verdict. The cumulative effect of these improper and highly prejudicial statements, statements with no probative evidentiary value in the case whatsoever, was to the deprive the Plaintiff of a fair trial. These extraneous and irrelevant issues had no bearing on the limited issue of damages that was before the jury.

### D.     The Jury's Questions Confirmed the Reasonable Probability of Prejudice to Plaintiff.

Finally, the questions posed by the jurors during deliberations demonstrate that defense counsel's remarks "affected a substantial right." *Allstate,* 845 F.2d at 319. During the course of their deliberations, the jury posed two questions. First, jurors asked, "Did Mr. Hoyle receive any workman's comp after the 2020 auto accident?" Doc. 237. The second question was "Has Mr. Mitchell's insurance paid anything at all?" That is, despite the Court's giving of a limiting instruction for the jury not to consider who would pay any damages, the jury focused in on exactly that issue. As the Eleventh circuit has acknowledged, "curative instructions do not always eradicate the prejudice resulting from an improper argument." *McWhorter,* 906 F.2d at 678. In *Goodman v. Safeco Ins. Co.*, No. 8:13-CV-2641-T-30EAJ, 2015 WL 898696, at *4–5 (M.D. Fla. Mar. 3, 2015), a new trial was granted where improper argument came at close of case, because "the Court cannot 'unring a

bell;' once the jury hears improper testimony or argument, it is presumed that it may rely upon it in its deliberation." *Id.* at *4-5.; *see also Fineman v. Armstrong World Indus. Inc.,* 774 F. Supp. 266, 270 (D.N.J. 1991) ("[C]autionary instructions do not necessarily remove the probability of prejudice: the bench and bar are both aware that cautionary instructions are effective only up to a certain point."). Furthermore, statements made in the closing minutes of trial raise the reasonable probability that the jury was prejudiced. *Falkowski,* 148 F.R.D. at 137; *Fineman*, 774 F. Supp. at 270.

Here, the cumulative effect of the statements by defense counsel through the trial, the admittedly improper statements made in the closing argument and the delay by the Court in responding to the improper arguments before the jury increased the reasonably probability that the jury was prejudiced. The way to correct this injustice is to grant Mr. Hoyle a new trial.

"[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her]." *Kleiman v. Wright*, No. 18-CV-80176, 2022 WL 594831, at *2 (S.D. Fla. Feb. 28, 2022) (citing *Sherrod*, 237 F. App'x at 424). Plaintiff's motion for mistrial following from Defendant's closing

argument was not the result of one errant misstatement by counsel—it was the

culmination of a series of misstatements by the Defendant that began at the start of

trial and infected the jury's fair deliberations.  Because the culmination of these

misstatements deprived the Plaintiff of a fair trial, Plaintiff respectfully requests

that this Court grant the motion for new trial.

    This 7th day of May, 2025.

<div style="margin-left:40%;">

/s/ Tiana S. Mykkeltvedt
TIANA S. MYKKELTVEDT
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree St., NW
Suite 3900
Atlanta, GA 30309
404-881-4100

M. Blake Fluevog
Georgia Bar No. 838726
bfluevog@forthepeople.com
MORGAN & MORGAN, PLLC
11605 Haynes Bridge Road, Suite 490
Alpharetta, Georgia 30009
770-576-7613

*Counsel for Plaintiff*

</div>

## <u>RULE 7.1(D) CERTIFICATE OF TYPE, FORMAT, AND FONT SIZE</u>

Pursuant to Local Rule 7.1(D) of the United States District Court for the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

This 7th day of May, 2025.

*/s/ Tiana S. Mykkeltvedt*
TIANA S. MYKKELTVEDT
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com

15

**<u>CERTICIATE OF SERVICE</u>**

I electronically filed **PLAINTIFF'S SUPPLEMENTAL MOTION FOR A NEW TRIAL** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 7th day of May, 2025.

<div align="right">

*/s/ Tiana S. Mykkeltvedt*
TIANA S. MYKKELTVEDT
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com

</div>